UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EXECUTIVE AMBULATORY
SURGICAL CENTER, LLC and
JIAB SULEIMAN D.O., P.C.,
                          Plaintiffs,

v.

ALLSTATE FIRE AND
CASUALTY INS. CO.,
                          Defendant.
_____/

Case No.: 21-10985

Sean F. Cox
United States District Judge

Curtis Ivy, Jr.
United States Magistrate Judge

## ORDER GRANTING IN PART, DENYING IN PART MOTIONS AT ECF Nos. 21, 28, 32, AND DENYING WITHOUT PREJUDICE MOTION AT ECF No. 35)

## I.      BACKGROUND

Plaintiffs Executive Ambulatory Surgical Center ("Executive") and Jiab

Suleiman, D.O., P.C. ("Suleiman PC"), filed this action against Allstate Fire and

Casualty Insurance Co. to recover payment for medical services rendered to a third

party.  Allstate removed the action from the Third Judicial Circuit in Wayne

County, Michigan, to this Court on May 3, 2021.  (ECF No. 1).  Plaintiffs and

Defendant have each filed two discovery motions.  A hearing was held February 1,

2022.  The matter is now ready for determination.

According to Plaintiffs' complaint, on November 15, 2019, third-party

Tommi Mason was injured in a motor vehicle accident.  Defendant is first in

priority to pay for Mason's claim for no-fault personal protection insurance benefits under Michigan law.  Because of the injuries Mason sustained, Plaintiffs provided products, services, and/or accommodations to aid in her recovery and rehabilitation.  (ECF No. 1-2, PageID.13).  This included physical therapy and surgery on her shoulder performed by Dr. Jiab Suleiman.  Plaintiffs submitted a bill to Defendant for $100,051.04 on behalf of Executive and $42,725.00 on behalf of Suleiman PC.  Plaintiffs also submitted supporting documentation and forms for Defendant to determine the reasonableness and necessity of the medical services rendered.  (*Id.* at PageID.14).  Defendant denied payment after an independent medical examination revealed the injury was not caused by the auto accident.[1]

Plaintiffs sue Defendant for payment of the insurance claim under M.C.L. §§ 500.3142 and 500.3157 and for breach of contract.

## II.   LEGAL STANDARDS

Parties may obtain discovery related to any nonprivileged matter relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the

---

[1] According to Defendant, aside from the results of the independent medical exam, other facts surrounding the surgery cast doubt on the need for the surgery.  (ECF No. 21, PageID.125-26, 134-35).  Suleiman PC ordered six weeks of physical therapy for Mason.  Yet two weeks into physical therapy, Suleiman halted it in favor of shoulder surgery at Executive.  Defendant questions whether there is overlapping ownership, control, or financial arrangements with other medical providers that influenced the decision to abandon physical therapy for more expensive treatment.  (*Id.* at PageID.128).

parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26. Information within this scope of discovery need not be admissible in evidence to be discoverable. *Id.* "Although a [party] should not be denied access to information necessary to establish her claim, neither may a [party] be permitted to 'go fishing,' and a trial court retains discretion to determine that a discovery request is too broad and oppressive." *Superior Prod. P'ship v. Gordon Auto Body Parts Co.*, 784 F.3d 311, 320-21 (6th Cir. 2015) (citing *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)). A party seeking discovery may move for an order compelling an answer, designation, production, or inspection. Fed. R. Civ. P. 37.

In Plaintiffs' response to Defendant's motion to compel, they asserted Michigan law applies to the discovery dispute. This is incorrect and they appear to drop that assertion given that they did not apply Michigan law in their own later-filed motions to compel or in their response to Defendant's motion for protective order.

## III. DISCUSSION

Before the hearing, the parties resolved several issues.  The Court heard argument on those that remained unresolved and described in the four statements of resolved and unresolved issues (ECF Nos. 39, 50, 51, 52).

A.    Defendant's Motion to Compel (ECF No. 21)

Of the remaining disputed discovery requests propounded by Defendant, two relate to the determination of whether Plaintiffs' charges for Mason's treatment are customary and reasonable.  Defendant seeks an itemization of Plaintiffs' actual costs for the treatment (Interrogatories 10 and 11) and production of bills to and payments from patients who paid cash (i.e., those who did not use insurance) to pay for services (RFP 14).  Broadly speaking, Plaintiffs argue the discovery is irrelevant, it would be unduly burdensome to calculate the cost of personnel (including the surgeon) and prorate the cost of medical equipment used during Mason's surgery, and they do not keep track of cash payments apart from payments from insurance, so it would be burdensome to chronicle them.

Michigan's no-fault statutory scheme prescribes the parties' burdens and provides the basis for what information is relevant to the claims or defenses here. In the case of motor vehicle injury, M.C.L. § 500.3157 entitles physicians and other medical caregivers of the injured party to "charge a reasonable amount for the products, services and accommodations rendered . . . not exceed[ing] the amount the person or institution customarily charges for like products, services and

4

accommodations in cases not involving insurance." The statute requires that "(1) the expense must have been incurred, (2) the expense must have been for a product, service, or accommodation reasonably necessary for the injured person's care, recovery, or rehabilitation, and (3) the amount of the expense must have been reasonable." *Moghis v. Citizens Ins. Co. of Am.*, 466 N.W.2d 290, 292 (Mich. Ct. App. 1990). The plaintiff bears the burden of proof on each of these elements. *See Williams v. AAA Michigan*, 646 N.W.2d 476, 480 (Mich. Ct. App. 2002)

The statute's "'customary charge' and 'reasonableness' language . . . constitute[ ] separate and distinct limitations on the amount providers may charge with respect to auto accident victims covered by no-fault insurance." *Advocacy Organization for Patients and Providers (AOPP) v. Auto Club Ins. Ass'n*, 176 F.3d 315, 320 (6th Cir.1999) (*citing Hofmann v. Auto Club Ins. Ass'n*, 535 N.W.2d 529, 554 (Mich. Ct. App. 1995). In determining "customary" charges, "the relevant inquiry under § 500.3157 is not the amount that is customarily charged to other health insurers, but rather the amount that is customarily charged in cases not involving insurance." *Hofmann*, 535 N.W.2d at 554. "[A] no-fault carrier is liable only for those medical expenses that constitute a reasonable charge for the product or service." *Munson Medical Center v. Auto Club Ins. Ass'n*, 554 N.W.2d 49, 53-54 (Mich. Ct. App. 1996). That said, § 500.3137 "leave[s] open the questions of what a 'reasonable charge' is, who decides what is 'reasonable,' and what criteria

5

may be used to determine what is 'reasonable.'" *Advocacy Organization for Patients and Providers*, 176 F.3d at 320 (*citing Munson Med. Ctr.,* 56, 554 N.W.2d 17).

The distinction between "customary" and "reasonable" in the No-Fault Act dictates what evidence is relevant and thus discoverable. The no-fault insurer need pay no more than a reasonable charge and is not liable for any charge that exceeds the provider's customary charge for a like product or service in a case not involving insurance. *Hofmann*, 211 Mich. App. at 103-107. That a charge is "customary" in cases without insurance does not necessarily mean that the charge is also reasonable. *AOPP*, 670 N.W.2d at 575-76. "Accordingly, while the 'customary' limitation establishes a cap on charges, the statutory 'reasonable amount' restriction on charges also functions as a distinct means of controlling healthcare costs in the context of the no-fault act." *Spectrum Health Hospitals v. Farm Bureau Mut. Ins. Co. of Michigan*, 960 N.W.2d 186, 201 (Mich. Ct. App. 2020).

There is a rather limited scope of evidence relevant to the customariness determination. Evidence showing what a particular provider charges for a particular procedure or service to patients who do not have any insurance, no-fault or otherwise, is relevant. However, "the acceptance of discounted payments does not define a health care provider's 'customary' charge." *Holland v. Trinity Health*

6

*Care Corp.*, 791 N.W.2d 724, 732 (Mich. Ct. App. 2010).  Evidence of what third-party insurers (i.e., non-no-fault insurers) paid for health services is not relevant to the customariness of a charge because those insurers (for example Medicaid or Blue Cross Blue Shield), are subject to statutory or contractual limitations, "whereas the amounts that [the no-fault insurer] must pay for covered medical expenses are not limited contractually." *Hoffman*, 535 N.W.2d at 557.  Thus, evidence of third-party insurance payments is not relevant to this determination. *See Spectrum*, 960 N.W.2d at 203.

The Michigan Court of Appeals has several decisions in which it determined what evidence can be considered or is relevant to the assessment of reasonableness. In *AOPP*, the court concluded the No-Fault Act did not prohibit consideration of charges by other healthcare providers for the same services.  670 N.W.2d at 579. In *Bronson Methodist Hosp. v. Auto-Owners Ins. Co.*, 814 N.W.2d 670 (Mich. Ct. App. 2012), the court concluded the cost to a healthcare provider of durable medical products used in treating an insured patient is an appropriate and discoverable consideration.  *Id.* at 681.  The court in *Spectrum* held "third party payments that are accepted by a healthcare provider as payment in full during the pertinent time frame for products and services are relevant to determining the reasonableness of charges."  960 N.W.2d at 210.  The "third party payments" discussed in *Spectrum* were not limited to payments made by other insurers; thus,

7

this would encompass payments made by uninsured third-party patients. *See id.* at 212-13 ("In sum, when assessing the reasonableness of a medical charge, relevant evidence includes the full range of charges and payments falling within the pertinent time frame for the particular services, products, and treatment at issue in the case."). These decisions do not provide a finite list of all possible evidence that could be relevant to a reasonableness determination, but they do provide some guidance here.

With these principles in mind, Defendant's motion to compel is denied in part with respect to the request for a list of actual costs and granted related to the cash payments request.

As to actual costs, Defendant asserts *Spectrum* allows for discovery of such information. This is incorrect. Among other things, *Spectrum* discussed *Bronson*, 814 N.W.2d at 682, which somewhat addresses the kind of discovery at issue. In *Bronson*, the court, relying on M.C.L. § 500.3158(2), held the defendant insurer was entitled to "discover the wholesale cost of the surgical implant products for which the insureds were charged." 814 N.W.2d at 682. The parties do not dispute that Defendant is entitled to a list of costs of any surgical materials implanted in Mason (which has already been produced). Defendant wants more—a breakdown of the cost of all surgical personnel (including surgeon Dr. Suleiman), surgical

tools, and medical equipment used during Mason's surgery to present to the jury

on the reasonableness of the charges.

The *Bronson* court was careful to limit its holding to discovery of easily

quantifiable surgical devices implanted in a patient.  The court stated,

> [w]e recognize that permitting insurers access to a
> provider's cost information could open the door to nearly
> unlimited inquiry into the business operations of a
> provider, including into such concerns as employee
> wages and benefits.  However, we explicitly limit our
> ruling to the sort of durable medical-supply products at
> issue here, which are billed separately and distinctly from
> other treatment services and which defendants represent
> (and plaintiff has not disputed) require little or no
> handling or storage by a provider. The surgical implant
> products here are standalone items that can be easily
> quantified. Plaintiff must come forward with evidence to
> convince a jury that the charges for the durable medical
> equipment were reasonable.

*Id.  Spectrum* did not cast doubt on this limitation or concern about opening the

door to unlimited discovery requests of a particular provider.[2]  960 N.W.2d at 216-

17.  Thus, neither *Bronson* nor *Spectrum* countenance the production of an

itemized list of all the actual costs to Plaintiffs of Mason's care, the kinds of costs

that are not "easily quantified."

---

[2] Indeed, the *Spectrum* court specifically stated that "*Bronson's* specific discovery holding seems to have little bearing on the present case" because the defendant in *Spectrum* did not seek discovery of the cost of a medical item.  960 N.W.2d at 214, 216.  Thus, Defendant's reliance on *Spectrum* as expressly allowing discovery of the detailed lists of actual costs lacks merit.

The warning in *Bronson* is especially apt here where the amount in controversy is not great and the burden of production outweighs its likely benefit. The Federal Rules of Civil Procedure require the Court to consider whether requested discovery is proportional to the needs of the needs of the case considering the issues at stake, the amount in controversy, access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense likely outweighs its likely benefit.

Considering these factors here, requiring Plaintiffs to prorate and itemize a comprehensive list of all the costs that went into Mason's surgery, or to gather tax documents, equipment receipts, and the like is too burdensome considering the value of the information. Still, some information should be produced.  In support of their position, Defendant cited the transcript and bench ruling in another case from this District, *Insight Surgical Hosp. v. Allstate Fire and Cas. Ins. Co.*, 21-10576.  There, the judge granted Allstate's motion to compel the hospital to add the amounts paid to personnel involved in the subject procedure and the cost of supplies used during that procedure.  *Id.* at ECF No. 24, PageID.276-78).  *Insight* did not require the hospital to itemize all actual costs involved in the procedure, unlike Defendant's request here.  The Court therefore does not find *Insight* persuasive.  At any rate, the cost of single use equipment can easily be gathered (such as tools used in surgery (i.e., scalpels, drills, etc.)), payments made to

personnel who assisted during the surgery, and an explanation of whether the $42,725 charged by Suleiman PC represents Dr. Suleiman's payment for the surgery, or includes other charges as well. So the costs associated with such should be produced.

Plaintiffs must produce documents in response to RFP 14 revealing invoices and the cash receipts for patients who paid cash (without insurance) for the same CPT codes as issue here. The amount charged to a cash-paying patient is relevant to the customariness issue and the amount accepted as payment by a third party is relevant to the determination of reasonableness of the charges. *See Spectrum*, 960 N.W.2d at 210 ("third party payments that are accepted by a healthcare provider as payment in full during the pertinent time frame for products and services are relevant to determining the reasonableness of charges."). Plaintiffs assert they charge the same for cash patients and insurance patients. Defendant is entitled to documentation to prove this assertion. If indeed Plaintiffs have no such information to produce, of course the Court cannot compel production. But a good-faith effort must be made to locate, compile, and produce this information.

There are two remaining sets of discovery requests at issue in Defendant's motion to compel. Defendant seeks documents pertaining to Dr. Suleiman's surgical privileges at Executive and his scheduled block of surgical time at Executive in RFPs 10 and 13. In RFPs 23, 24, and 25, directed at Executive, it

11

asks for contracts with health insurers related to billing; applications and approvals to participate in Medicare or other federal health programs; and any accreditation it has sought or obtained.

The request for documents related to Dr. Suleiman's privileges and blocked time at Executive go to the question of necessity. Defendant questions whether Mason's surgery was medically necessary or whether the decision to perform surgery was impacted by improper motives, such as to match the requisite number of surgeries to keep the blocked time. Evidence bearing on the necessity for the procedure is relevant. Plaintiff argued RFPs 10 and 13 did not ask for surgical privilege or blocked time documents, so they were not required to produce them. Since Plaintiffs raised that objection, Defendant sent new requests specifically asking for these documents, but asserts Plaintiffs still have not produced them. Plaintiffs, however, assert there are no financial agreements or contracts between Dr. Suleiman and Executive. It seems unlikely a surgeon and surgical center would not have any documentation memorializing an agreement under which the surgeon would perform surgeries there. The motion to compel these documents is granted. If such documentation does not exist, the Court cannot compel production.

As to RFPs 23, 24, and 25, the motion is granted in part as follows. Defendant may not discover Executive's contracts with health insurers or

agreements with federal health programs.  The contents of those contracts or

agreements are not relevant to the question of reasonableness.  As explained in

*Spectrum*, health insurers, such as Blue Cross Blue Shield, and federal health

programs, such as Medicare, are not governed by Michigan's No-Fault Act.  A

provider and a health insurer can come to an agreement about charges for services

that is separate and apart from a no-fault insurer's obligation to pay reasonable and

customary medical expenses.  Similarly, the agreement between a provider and

federal health program is prescribed by federal statute.  *See Spectrum*, 960 N.W.2d

at 204-06.  And any breach of contract between Executive and a health insurer

would not be relevant to whether the charge *here* was reasonable and customary.

That said, the amount a provider accepts as payment in full from a health insurer or

federal program is relevant to the question of reasonableness in this context.  Thus,

Executive must, if it has not already done so, produce payments received in full for

the same CPT codes in this case.

Documentation on Executive's accreditation is relevant to whether it was

legally able to provide surgical services.  But only the documentation

demonstrating the fact of accreditation is relevant and should be produced.

Defendant has not made the case that a breach of contract between Executive and

the accrediting body would be relevant to the issues in this case.  Like other health

insurers, the contents of a contract with an accrediting body are separate and apart

13

from a no-fault insurer's obligation to pay reasonable and necessary medical expenses.

B.    Plaintiffs' Motions to Compel (ECF Nos. 28, 32)

Plaintiffs propounded several discovery requests at issue here.  Some of those requests seek information from Defendant about how it calculates a reasonable rate for medical services.  These requests are Interrogatory 12, RFPs 14-16, and RFPs 19-21.  More specifically, as limited after the parties' meet and confer, Interrogatory 12 asks Defendant to explain how it determines the reasonable and customary rate in the geographic region in which Plaintiffs practice for the specific CPT codes at issue.  (ECF No. 51, PageID.2469).  The issues on RFPs 14-16 have been narrowed to a November 9, 2019, billing analysis report ordered by Defendant.  Plaintiffs used RFPs 19-21 to obtain Explanations of Bills ("EOBs") approving payments for similar CPT codes, data relied on in evaluating charges for reasonable and customary rates, and contracts Defendant has with third party bill review companies.  (ECF No. 50, PageID.2464).

Defendant's argument against these requests, in the main, is that Plaintiffs bear the burden of proof on the question of reasonableness so it has nothing it must produce.[3]  Defendant argues it denied the claim based on causation following an

---

[3] Defendant raised other objections to each interrogatory, for example asserting they exceed the number allowed in Fed. R. Civ. P. 33.  But Defendant did not press this argument in its response brief.  Thus the Court will not address it.

independent medical examination.  While unreasonableness of the charge is one of

Defendant's affirmative defenses, Plaintiffs bear the burden of demonstrating the

reasonableness of their charges.  Further, Defendant would introduce only expert

testimony, not lay testimony, on the reasonableness issue.  Expert reports will be

provided in due course, and the parties will then conduct expert discovery.  Thus,

evidence of how it would hypothetically calculate what it determines to be a

reasonable charge is not relevant and should not be compelled.

While Plaintiffs have the burden of proving their rates are reasonable and

customary, "how an insurer goes about calculating whether a particular expense is

reasonable is relevant in an action to recover benefits."  *Robinson v. Allstate Ins.

Co.*, 2011 WL 3111952, at *7 (E.D. Mich. June 30, 2011) (citing *Advocacy

Organization for Patients & Providers v. Auto Club Ins. Ass'n*, 670 N.W.2d 569,

577-79 (Mich. Ct. App. 2003)).  But here, the "particular expense" was not denied

as unreasonable, so the only available discovery of how Defendant would calculate

the rate here is a November 9, 2019 billing analysis report, discussed below.

Plaintiffs insist they are entitled to an explanation on how Defendant

generally calculates reasonableness or how it would calculate reasonableness here,

and to the documents on which it does or would rely pursuant to *Wagner v. State

Farm Mut. Auto. Ins. Co.*, 2011 WL 13217193 (E.D. Mich. May 5, 2011).  In

*Wagner*, the defendant insurance company sought a protective order against a

15

subpoena *duces tecum* for documents it used in determining the value of services at issue and all the underlying data.  Citing *AOPP*, the court determined "the methods by which defendant initially calculates a reasonable rate is relevant."  *Id.* at *4.

Defendant has not cited contrary authority.  Rather, it takes a broad view of these requests.  According to Defendant, a response would require disclosure of information about tens of thousands of determinations about thousands of patients and providers, including identification of each individual involved in the decision and all documents used for each decision.  (ECF No. 51, PageID.2471-72).  To the extent that this is exactly the kind of information and documents Plaintiffs seek, the requests are overbroad and not proportional to the needs of this case and is limited as follows.

Plaintiffs' motion to compel responses to interrogatory 12 and RFPS 19-21 is **GRANTED IN PART**.  Plaintiffs are entitled to a general explanation of the process or methods by which Defendant calculates a reasonable rate for the same CPT codes, including the information it generally relies on.  That said, evidence of Defendant's actual handling of other claims from other providers (e.g., EOBs for other providers) is not relevant to whether Plaintiffs' charges were reasonable.  The claims paid by Defendant in other cases, from another time, and with different facts have no bearing on whether the bills here are objectively reasonable.  Plaintiffs also ask for EOBs on the same CPT code submitted by them in other

cases.  It would seem Plaintiffs have equal, if not easier, access to their EOBs.

Thus, the Court will not compel production of EOBs or other documents showing

payments made by Defendant to other providers or to Plaintiffs in other cases for

the same CPT codes.

In RFP 19 Plaintiffs ask for copies of all contracts or agreements between

Defendant and third parties hired to render opinions as to reasonable and

customary rates.  They argue this information is relevant to determine whether

Defendant's denial of the charges was pursuant to an improper motive—for

instance, Plaintiffs question whether the bill reviewing company received a

percentage of the money saved from a denial.  (ECF No. 32, PageID.1209).  The

motion to compel a response to RFP 19 is denied in part.  As addressed below,

Plaintiffs are entitled to the November 9, 2019 bill review conducted by a third

party.  They are not entitled to contracts between Defendant and any third party it

hires to conduct bill review analyses—such are not relevant and are not

proportional to the needs of this case.

As to the November 9, 2019 billing analysis report (the remaining issue in

RFPs 14-16), Defendant asserts the report need not be produced because it was

prepared in anticipation of litigation and because production of expert reports (if

Defendant intends to use the witness at trial) follows Fed. R. Civ. P. 26(a)(2)(A),

not a request for documents.  (ECF No. 38, PageID.1883).  And Defendant points

out *drafts* of reports are not discoverable as they fall under the "anticipation of litigation" privilege.

Plaintiffs argue none of these objections apply. First, because the report was ordered three months before this litigation began and one week before Defendant's independent medical examination report showed the alleged causation issue, the billing analysis could not have been prepared in anticipation of litigation. (ECF No. 32, PageID.1203-05). Finally, they assert the analysis is not an "expert report" because it was prepared in the ordinary course of Defendant's business. They contend experts are specifically retained to provide expert testimony and create a report pursuant to Fed. R. Civ. P. 26(a)(2)(B), while here the analysis likely does not touch on the requirements of an expert report. (*Id.* at PageID.1205-06).

The Federal Rules of Civil Procedure provide that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative. . . . " Fed. R. Civ. P. 26(b)(3). In determining whether a document was prepared "in anticipation of litigation," Courts must ask first whether litigation was a real and substantial possibility and whether the particular document was generated because of the threat of litigation, and not for ordinary business purposes. *In re OM Group Securities Litigation*, 226 F.R.D. 579, 585 (N.D. Ohio 2005) (citing 8 Wright, Miller & Marcus, *Federal Practice and Procedure* § 2024 (2d ed. 1994)); *Harper*

*v. Auto–Owners Ins. Co.*, 138 F.R.D. 655, 659 (S.D. Ind. 1991). "'A more or less

routine investigation of a possibly resistible claim is not sufficient to immunize an

investigative report developed in the ordinary course of business.'" *Binks*

*Manufacturing Co. v. National Preso Industries, Inc.*, 709 F.2d 1109, 1119 (7th

Cir. 1983) (quoting *Janicker v. George Washington Univ.*, 94 F.R.D. 648, 650

(D.D.C. 1982)).

A factual investigation of an insurance claim by an insurance company is

generally seen as within the ordinary course of an insurance company's business,

but whether the doctrine applies in a given case is a fact-dependent inquiry. *See*

*e.g.*, *Harper*, 138 F.R.D. at 663; *see also AIU Ins. Co. v. TIG Ins. Co.*, 2008 WL

4067437 (S.D.N.Y. Aug. 28, 2008). As one court explained,

> [b]ecause an insurance company has a duty in the
> ordinary course of business to investigate and evaluate
> claims made by its insured, the claims files containing
> such documents usually cannot be entitled to work
> product protection. Normally, only after the insurance
> company makes a decision with respect to the claim will
> it be possible for there to arise a reasonable threat of
> litigation so that information gathered thereafter might be
> said to be acquired in anticipation of litigation.

*Pete Rinaldi's Fast Foods v. Great Am. Ins. Companies*, 123 F.R.D. 198, 201

(M.D.N.C. 1988).

The factual circumstances giving rise to the billing analysis establish the

report cannot be viewed as made in anticipation of litigation. Defendant, as a no-

fault insurer, is directed by statute to assess all provider charges for reasonableness of rate.  That Defendant may be subject to a possible suit in a case it evaluates does not establish the kind of anticipation contemplated in the case law.  So too here, when Defendant obtained the billing analysis report, it was conducting an ordinary business activity and did not yet know it would deny Plaintiffs' claims on causation.  Thus, it was not yet in anticipation of litigation.  The Court therefore concludes the billing analysis report is not protected by this doctrine.

Defendant asserts that, as a non-testifying consulting expert, the report is excluded from discovery under Fed. R. Civ. P. 26(b)(4)(D) absent extraordinary circumstances.  (ECF No. 50, PageID.2463-64).  Plaintiffs did not engage with this specific assertion.  Generally, "a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party *in anticipation of litigation* or to prepare for trial and who is not expected to be called as a witness at trial."  *See* Fed. R. Civ. P. 26(b)(4)(D) (emphasis added).  There is an exception to this rule, however, when a party can show "exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means."  *Id.* at 26(b)(4)(D)(ii).

As discussed above, the facts suggest more strongly that the billing reviewer was not obtained as a consultant in anticipation of litigation.  *See, e.g.*, *AIU Ins.*

20

*Co. v. TIG Ins. Co.,* 2008 WL 4067437, at * 12 (S.D.N.Y. Aug.28, 2008) (noting

that "it is the routine business of insurance companies to investigate and evaluate

claims"); *Westhemeco, Ltd. v. New Hampshire Ins. Co.,* 82 F.R.D. 702, 708

(S.D.N.Y. 1978) ("The nature of the insurance business is such that an insurance

company must investigate a claim prior to determining whether to pay its

insured.").  Thus, the prohibition on discovery of non-testifying reports does not

apply here.

Defendant must produce the November 9, 2019 billing analysis report to

Plaintiffs.

The remaining requests at issue in Plaintiffs' motions to compel ask for

summaries of witness testimony (Interrogatory No. 14) and production of

Defendant's CASA (case and subject analytics) database on Plaintiffs (RFPs 1 and

18).

Plaintiffs state they seek summaries of testimony only for witnesses

employed by Defendant.  For other witnesses over whom Defendant does not have

control, general information about the witness's knowledge would suffice.

Defendant argues this request inappropriately seeks attorney work product and the

claim diary in Mason's file lists the relevant employees' involvement in handling

the claim which should be sufficient to meet Plaintiffs' needs.

Federal Rule of Civil Procedure 26(a)(1)(A)(i) requires a party to disclose, in initial disclosures, the name and contact information of each person likely to have discoverable information, including "the subjects of that information." Each party has the right to use interrogatories (or other tools of discovery) to learn of information about potential witnesses.

Plaintiffs are entitled to a reasonable summary of the potential testimony each witness may provide. Defendant need not provide each fact a witness would testify to. But it must have some understanding of their own witnesses' testimony, otherwise naming them would be illogical. Thus, Defendant must summarize the likely testimony of each of its witnesses. These summaries would not require Defendant to disclose its attorney's questions or notes about the witnesses. The Court is not requiring the production of Defendant's attorney's legal strategy or inferences drawn from interviews of witnesses. *See West v. Lake State Ry. Co.*, 321 F.R.D. 566, 570 (E.D. Mich. 2017) ("underlying facts or data are not protected from disclosure under any privilege."); *Askew v. City of Memphis*, 2015 WL 12030096, at *3 (W.D. Tenn. July 23, 2015) ("detailed descriptions of the knowledge of the twenty-seven crime scene witnesses are not protected by the work product privilege."); *Hickman v. Taylor*, 329 U.S. 495, 508 (1947) (information secured from a witness conveying the facts underlying the case is not privileged). A general summary of likely testimony will suffice.

Lastly, Plaintiffs seek production of all the CASA files Defendant has on the two plaintiffs.  The CASA database is where Defendant stores documents about providers.  Plaintiffs contend these documents are relevant to disprove a potential assertion from Defendant that they billed unreasonably (i.e., that they improperly upcoded or unbundled their charges) in violation of the No-Fault Act.  Defendant has already produced to Plaintiffs its entire file on Mason.  It asserts production of all the CASA files related to other patients is irrelevant to whether Plaintiffs charged a reasonable rate for Mason's care.  (ECF No. 50, PageID.2460-61).

The Court will not compel the CASA files related to any patient other than Mason.  Any billing issues in other cases are unlikely to be relevant in this case. And if Defendant concluded Plaintiffs improperly billed in other cases, that determination would likely be in explanations of bills provided to them in those cases.

### C.     Defendant's Motion for Protective Order (ECF No. 35)

Plaintiffs have noticed the depositions of four Allstate employees and the "individual most knowledgeable" to testify to how reimbursement rates and bill payments are determined.  Defendant moves for a protective order under Fed. R. Civ. P. 26(c) to prevent these depositions.  Defendant explains Plaintiffs have already deposed two employees who evaluated and adjusted the bills at issue. (ECF No. 35, PageID.1481).  Further, the deposition notices include a request for

documents pertaining to how Defendant determines rates in other cases. (*Id.* at PageID.1482). Defendant's position, as above, is that how it determines what is a reasonable rate for medical services in other cases is irrelevant to Plaintiffs' burden to prove the rates charged here are reasonable and customary. And the persons noticed for deposition do not have relevant knowledge and Defendant intends only to introduce expert rather than lay testimony as to reasonableness. (*Id.* at PageID.1488-90).

Plaintiffs insist they are entitled to take these depositions for various reasons. First, they noticed the five depositions because Defendant refuses to give them the name of a person who generates the information in explanations of bill payments. Second, they contend the information they ultimately seek is relevant to the reasonableness issue. Attached to the response brief are two bills submitted by Executive for the same CPT codes in other cases. Defendant paid those two bills "at very high rates." (ECF No. 42, PageID.2038). "Plaintiffs are looking for [ ] what those payments reflected on Allstate's EOBs are based upon." (*Id.* at PageID.2039). The two persons already deposed did not know what system the "bill review team" uses to determine the reasonableness of charges. (*Id.* at PageID.2043-44).

To satisfy the requirements of Rule 26(c), "the moving party must show 'good cause' for protection from one (or more) harms identified in Rule 26(c)(1)

'with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" *In re Ohio Execution Protocol Litig.*, 845 F.3d 231, 236 (6th Cir. 2016) (quoting *Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012)); *Beckman Indus., Inc., v. International Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test."). "To show good cause, a movant for a protective order must articulate specific facts showing 'clearly defined and serious injury' resulting from the discovery sought and cannot rely on mere conclusory statements." *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001) (quoting *Avirgan v. Hull*, 118 F.R.D. 252, 254 (D.D.C. 1987)) (citations omitted)). Furthermore, "[t]o justify restricting discovery, the harassment or oppression should be unreasonable, but 'discovery has limits and these limits grow more formidable as the showing of need decreases." *Serrano* at 901 (quoting 8A Charles Alan Wright & Arthur R. Miller *et al*., Federal Practice and Procedure § 2036 (3d ed. 2012)). Courts have broad discretion at the discovery stage to determine whether a protective order is appropriate and what degree of protection is required. *Seattle Times v. Rhinehart*, 467 U.S. 20, 36 (1984).

First, as discussed above, "the methods by which defendant initially calculates a reasonable rate is relevant." *Wagner*, 2011 WL 13217193, at *4. And

as limited above, what is relevant is the calculation of reasonable rates for the same CPT codes.  Moreover, irrelevance is not a basis for a protective order.

Defendant insists it would be burdensome to produce the four noticed individuals because they had no actual involvement in this case.  Producing them for deposition would take time and money that need not be spent on discovery in this matter.  At the hearing, Plaintiffs conveyed they were not so concerned with deposing those four persons specifically.  They asserted a single Rule 30(b)(6) witness who could testify to the topics would be sufficient.  On that, Defendant argued the notice for the person "most knowledgeable" is too broad to identify a corporate representative.

With the principles discussed herein in mind, the Court directs the parties to confer on a 30(b)(6) deposition notice to allow Plaintiffs the opportunity to depose a corporate representative on the topics found relevant in this Order.  If the parties cannot agree, they should contact chambers to schedule a status conference. Therefore, the motion for protective order is **DENIED WITHOUT PREJUDICE**.

    D.   <u>Conclusion</u>

For the reasons discussed above, the Court rules as follows.  Defendant's Motion to Compel (ECF No. 21) is **GRANTED IN PART, DENIED IN PART.**

- o Plaintiffs must compile a reasonable list of actual costs of the surgery;
- o Plaintiffs must produce bills submitted and payments received by cash-paying patients;

- o Plaintiffs must produce documents or contracts reflecting agreements between Suleiman PC and Executive, including any documentation regarding Dr. Suleiman's block of surgical time; and
- o Executive must produce evidence of payments received in full for the same CPT codes and documents demonstrating the fact of its accreditation.

Plaintiffs' Motions to Compel (ECF Nos. 28, 32) are **GRANTED IN PART, DENIED IN PART.**

- o Defendant must provide a general explanation of its processes/methods used to calculate a reasonable rate for the same CPT codes and the information generally relied upon;[4]
- o Plaintiffs are not entitled to contracts between Defendant and any third party insurer, but they are entitled to the November 9, 2019 billing analysis;
- o Defendant must provide a reasonable summary of its witnesses' testimony; and
- o Defendant need only produce any CASA files pertaining to Mason's care.

Defendant's Motion for Protective Order (ECF No. 35) is **DENIED WITHOUT PREJUDICE.**

**IT IS SO ORDERED**.

The parties to this action may object to and seek review of this Order, but are required to file any objections within 14 days of service as provided for in Federal Rule of Civil Procedure 72(a) and Local Rule 72.1(d).  A party may not

---

[4] If Plaintiffs can take a 30(b)(6) deposition, they may be able to acquire this information from the deponent rather than requiring Defendant to provide an explanation.  The parties should explore this possibility before Defendant undertakes an explanation.

assign as error any defect in this Order to which timely objection was not made.

Fed. R. Civ. P. 72(a).  Any objections are required to specify the part of the Order

to which the party objects and state the basis of the objection.  When an objection

is filed to a magistrate judge's ruling on a non-dispositive motion, the ruling

remains in full force and effect unless and until it is stayed by the magistrate judge

or a district judge.  E.D. Mich. Local Rule 72.2.


Date:  February 15, 2022          s/Curtis Ivy, Jr.
                                                 Curtis Ivy, Jr.
                                               United States Magistrate Judge