UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EXECUTIVE AMBULATORY
SURGICAL CENTER, LLC; and
JIAB SULEIMAN, D.O, P.C,
as Assignees of Tommi Mason,

     Plaintiffs,

v.

ALLSTATE FIRE AND CASUALTY
INSURANCE COMPANY,

     Defendant.
_____/

Case No. 21-cv-10985

Honorable Sean F. Cox
United States District Court Judge

## OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This is a breach of insurance contract case. Plaintiffs, Executive Ambulatory Surgical Center and Jiab Suleiman ("Jiab"), allege that Defendant, Allstate Fire and Casualty Insurance Company ("Allstate"), violated Michigan's No-Fault Act by failing to reimburse them for medical procedures performed on Tommi Mason ("Mason"), an Allstate policy owner. This matter is before the Court on Allstate's Motion for Summary Judgment against both Plaintiffs. Pursuant to E.D. Mich. LR 7.1 (f)(2), the Court finds this Motion has been adequately briefed and will rule without hearing.

For the reasons below, the Court **DENIES** Allstate's Motion. The Court holds that when considering the entire record, including Dr. Jiab Suleiman's affidavit, a triable issue of fact exists with respect to the causation of Mason's injuries, the necessity of treatment Mason received, and the reasonableness of the expenses for the treatment Mason received. Additionally, the Court

1

holds that legality is not a specific element when determining a medical provider's eligibility for reimbursement under Michigan's No-Fault Act, and that any argument about "unbundling" is an argument about the reasonableness of charges.

## BACKGROUND

### A. Procedural Background

On February 8, 2021, Plaintiffs, Executive Ambulatory Surgical Center, LLC, and Jiab Suleiman, D.O., P.C., filed a complaint against Defendant, Allstate, in state circuit court in Wayne County, Michigan. (Compl. ECF No. 1). On May 3, 2021, Allstate removed this matter to federal court. (Removal Notice, ECF No. 1). This Court has proper diversity subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

Plaintiffs' complaint contains two counts. Count one alleges that Allstate's failure to reimburse Plaintiffs for services rendered to Mason, after she sustained a car accident, violated the personal injury protection portion of Mich. Comp. Laws § 500.3101 et. seq., Michigan's No-Fault Act. Count two alleges that Allstate's failure to pay during the same transaction constituted a breach of contract. (Compl., ECF No. 1).

On August 22, 2022, Allstate filed a Motion for Summary Judgment against both Plaintiffs, seeking dismissal of all claims against it. (Def.'s Mot. Summ. J., ECF No. 62). With respect to summary judgment motions, this Court's practice guidelines are included in the Scheduling Order and provide, consistent with Fed. R. Civ. P. 56 (c) and (e), that:

> a. The moving party's papers shall include a separate document entitled Statement of Material Facts Not in Dispute. The statement shall list in separately numbered paragraphs concise statements of each undisputed material fact, supported by appropriate citations to the record. . .
>
> b. In response, the opposing party shall file a separate document entitled Counter-Statement of Disputed Facts. The counter-statement shall list in separately numbered paragraphs following the order or the movant's statement, whether

> each of the facts asserted by the moving party is admitted or denied and shall also be supported by appropriate citations to the record. The Counter-Statement shall also include, in a separate section, a list of each issue of material fact as to which it is contended there is a genuine issue for trial.
>
> c. All material facts as set forth in the Statement of Material Facts Not in Dispute shall be deemed admitted unless controverted in the Counter-Statement of Disputed Facts.

(Scheduling Order at 3, ECF No. 12). All parties complied with the Court's practice guidelines for summary judgment motions.

### B. Factual Background

Mason was involved in a car accident on November 15, 2019. (Def.'s Statement ¶ 1); (Pl.'s Counterstatement ¶ 1). Following the accident, Mason received treatment for left shoulder pain from Jiab Suleiman, D.O. P.C., and Executive Ambulatory Surgical Center, LLC. (Compl. ¶ 1-2, ECF No. 1-2). Jiab Suleiman ("Jiab") was Mason's treating physician.

Mason sought treatment from Jiab in August 2020, more than nine months after her accident. (Def.'s Statement ¶ 2); (Pl.'s Counterstatement ¶ 2). Jiab testified that he was not sure why there was a delay in presenting to him. (Def.'s Statement ¶ 5); (Pl.'s Counterstatement ¶ 5). However, Jiab also testified that he knew Mason had been seeing other doctors and had been doing physical therapy prior to their first appointment. (Jiab Dep. 16:14-23, ECF No. 66).

Mason's first appointment with Jiab was on August 21, 2020. During Mason's initial visit, Jiab performed an "INJECTION UNDER ULTRASOUND" on Mason's left shoulder. (8/21 Visit Notes, ECF No. 62-3). The ultrasound revealed significant synovitis in and partial tearing of the supraspinatus tendon. *Id*. Based on the ultrasound, Jiab initially diagnosed Mason with strained muscles and tendons in her left rotator cuff. Jiab also noted that Mason's condition was worsening. *Id*. Jiab ordered a treatment plan of physical therapy three times per week for six weeks with a reevaluation after four weeks. *Id*.

On September 4, 2020, after just two weeks of physical therapy, and two weeks earlier than recommended in Jiab's treatment plan, Mason returned to Jiab for a reevaluation. (Def.'s Statement ¶ 20); (Pl.'s Counterstatement ¶ 20). Mason's September 4 visit notes did not explain why she returned earlier than recommended. (9/4/20 Visit Notes, ECF No. 62-9). Jiab also testified that he could not remember why Mason returned two weeks early. (Jiab Dep. 39:12-40:23, ECF No. 62-5).

Jiab's diagnoses of Mason on September 4 was the same as his diagnosis during her August 21 visit. (Def.'s Statement ¶ 24); (Pl.'s Counterstatement ¶ 24). However, Jiab also proscribed additional pain medication and recommended surgical intervention. (9/4/20 Patient Notes, ECF No. 62-9).

On September 15, 2020, Jiab performed surgery on Mason's shoulder. Before operating, Jiab performed a diagnostic arthroscopy, which he billed to Allstate. (Def.'s Statement ¶ 32); (Pl.'s Counterstatement ¶ 32). Jiab testified that during the diagnostic arthroscopy, he was able to determine his initial diagnosis, that Mason had a torn rotator cuff, was incorrect. According to Jiab, the arthroscopy revealed that Mason's labrum, not her rotator cuff, was torn. (Jiab Dep. 50:24-52:4). Therefore, Jiab pivoted. He performed surgery to repair Mason's torn labrum and other issues he found in her shoulder. *Id*.

In total, Jiab performed and billed Allstate for the following six procedures: 1) arthroscopic repair of a SLAP lesion; 2) synovectomy; 3) claviculectomy; 4) biceps tenotomy and thermal capsular shift; 5) lysis and 6) subacromial decompression. (Def.'s Statement ¶ 34); (Pl.'s Counterstatement ¶ 34).

In Jiab's medical opinion, all procedures he performed were "reasonably necessary to treat Ms. Mason's symptoms, injuries and complaints caused by the November 15, 2019, motor vehicle collision." (Jiab Report, ECF No. 64-6).

## STANDARD OF DECISION

Summary judgment will be granted where there exists no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuine issue of material fact exists where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The mere existence of a scintilla of evidence in support of the [non-moving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. The Court "must view the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the non-moving party." *Skousen v. Brighton High Sch.*, 305 F.3d 520, 526 (6th Cir. 2002).

Further, "[i]t is an error for the district court to resolve credibility issues against the nonmovant . . . ." *CenTra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir. 2008). "In effect, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true . . . ." *Id.* (quoting *Ctr. for Bio–Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 820 (6th Cir. 2007)).

## ANALYSIS

Because this Court sits in diversity, the substantive law of Michigan will govern the claims and analysis in this case. *Armisted v. State Farm Mut. Auto. Ins. Co.*, 675 F.3d 989, 995 (6th Cir. 2012).

Allstate's Motion for Summary Judgment asks this Court to rule in its favor and dismiss Plaintiffs' no-fault personal injury protection claims and breach of contract claims in their entirety. (Def.'s Mot. Summ. J. 1, ECF No. 62). Allstate's Brief and Reply in support of its Motion raise the following issues: 1) whether the affidavit Jiab submitted, subsequent to his expert report and deposition, may be properly considered by this Court; 2) whether Mason's injuries were causally related to her car accident; 3) whether the procedures Jiab performed on Mason were medically necessary; 4) whether Plaintiffs' charges, if "unbundled," were legally payable; and 5) whether Plaintiff's charges were actually improperly "unbundled."

The Court finds that: 1) that it may consider Jiab's affidavit; 2) that a triable issue of fact exists with respect to the causation of Mason's injuries and the necessity of treatment Mason received; 3) that legality is not a specific element when determining a medical provider's eligibility for reimbursement under Michigan's No-Fault Act; 4) that the "unbundling" of charges is a factual issue concerning the reasonableness of amounts billed; and 5) that the record contains sufficient evidence about the CPT codes Plaintiffs used to create a dispute of fact whether the codes were "unbundled" and unreasonable.

1. **The Court Will Consider Jiab's Affidavit**

Allstate argues that Jiab's affidavit should not be considered by this Court because it is "based on speculation and contradicts [Jiab's] own expert report and sworn testimony." (Def.'s Reply 3, ECF No. 69). The Court finds that it may properly consider Jiab's affidavit as part of the record because it is not contradictory to his expert report or deposition.

A plaintiff may provide additional testimony in an affidavit in response to allegations or arguments in a defendant's motion unless it directly contradicts his previous sworn testimony. *Aerel, S.R.L. v. PCC Airfoils, L.L.C.,* 448 F.3d 899, 908 (6th Cir. 2006). "If ... there is

no direct contradiction, then the district court should not strike or disregard that affidavit unless the court determines that the affidavit 'constitutes an attempt to create a sham fact issue.'" *Id.* (quoting *Franks v. Nimmo,* 796 F.2d 1230, 1237 (10th Cir. 1986)).

Additionally, if a plaintiff was not directly questioned about an issue, and he seeks to "supplement incomplete deposition testimony with a sworn affidavit," such an affidavit is admissible evidence to "fill a gap left open by the moving party." *Arel*, 448 F.3d at 907.

With respect to an expert report, district courts may permit the submission of affidavits subsequent to expert reports as long as they are consistent, and the affidavit represents an elucidation of elements of the expert's report that required more direct treatment in light of the defendant's motion. *Jacobs v. Tricam Indus.*, Inc., 816 F. Supp. 2d 487, 492 (E.D. Mich. 2011).

Jiab's affidavit contains two relevant parts: discussion about Jiab's rationale for using certain CPT codes to bill Allstate (Jiab Aff. ¶ 19, ECF no. 71-4), and discussion about Jiab's treatment of Mason. (Jiab. Aff. ¶¶ 1-18, ECF No. 71-4). Each part of Jiab's affidavit will be discussed separately.

First, the Court will consider Jiab's narrative expanding on his reasoning for billing with certain CPT codes. (Jiab Aff. ¶ 19). Allstate argues that Plaintiffs used incorrect CPT codes, which makes their claims unpayable. (Def.'s Mot. Summ. J. 19, ECF No. 62). However, at Jiab's deposition, Allstate failed to ask him to explain why or how he chose the CPT codes he used to generate bills.[1] Therefore, the Court may consider the portion of Jiab's affidavit discussing the

---

[1] Allstate's discussion of CPT codes during Jiab's deposition focused exclusively on Jiab's methodology for determining costs for each code he used. (*See* Jiab Dep. 60:16-70:4).

use of CPT codes because it fills a gap in his deposition testimony, responds to an argument raised in Allstate's Motion, and does not contradict prior testimony. [2]

Second, the Court will consider the portion of Jiab's affidavit relating to the treatment of Mason. Allstate argues that Jiab's opinions in his expert report and affidavit are inconsistent. (Allstate Reply 3, ECF No. 69). Allstate's argument has no merit. Based on the content of Jiab's expert report, his subsequent affidavit merely clarifies elements contained in his report.

Jiab's affidavit states that Mason's labral tear, synovitis, and other underlying pathology in her left shoulder was either caused or aggravated by her car accident on November 15, 2019. (Jiab Aff. ¶ 4, ECF No. 64-2). Jiab's expert report similarly states that "each service provided to Mason was reasonably necessary to treat Mason's symptoms, injuries and complaints caused by the November 15, 2019, motor vehicle collision." (Jiab Report 2-3, ECF No. 71-5).

Allstate's reading of Jiab's expert report is too narrow. Surely, the aggravation of a pre-existing injury could be a "symptom" or "complaint" caused by Mason's car accident. Jiab's affidavit clarifies elements present in his expert report.

Jiab's deposition is also consistent with his affidavit. Allstate argues that during his deposition, Jiab had an opportunity to explain his medical opinions further and he failed to do so. (Def.'s Reply 3, ECF No. 69). Allstate further argues that Jiab admitted, in his deposition, that conditions addressed in surgery were not caused by Mason's accident, that Jiab conceded that Mason had a torn labrum and not a torn rotator cuff as initially diagnosed, and that Jiab did not testify that Mason may have had preexisting conditions. *Id*.

---

[2] CPT codes fall outside the scope of Jiab's expert report, so the Court need only focus on Jiab's deposition.

8

Allstate's arguments do not put Jiab's testimony in conflict with his affidavit. Allstate is correct that Jiab testified that he found pathology in Mason's shoulder, and he was unsure what caused the pathology. (Jiab Dep. 54:19-22). However, Allstate's counsel failed to ask Jiab whether he thought the pathology, even though he was unsure of its origins, was aggravated by Mason's accident. In fact, Allstate admits Jiab was not asked to expand on his medical opinions with respect to Mason's injuries. (Def.'s Reply 4, ECF No. 69).

Further, with respect to Mason's rotator cuff, Jiab freely admitted his initial diagnosis of a torn rotator cuff was incorrect but offered a rational explanation for his mistake. (Jiab Dep. 51:1-7). According to Jiab, an ultrasound of the shoulder, which he performed on Mason during their initial visit, is not always accurate. Jiab further testified that once he was able to perform a diagnostic arthroscopy, he was able to confirm Mason suffered from a labral tear, not a torn rotator cuff. *Id.* at 52:11-25. Again, Allstate's counsel failed to ask Jiab if his discovery that Mason tore her labrum, not her rotator cuff, impacted his opinion that Mason's car crash was the root cause.

Lastly, Allstate is correct that Jiab did not testify that Mason may have had preexisting conditions. (*See* Wells Dep. 50-56). However, again, Allstate's counsel failed to ask Jiab any questions about the possibility that Mason's crash aggravated pre-existing conditions.

The only question Allstate asked Jiab relating to pre-existing conditions was a hypothetical about incidental findings in a person's shoulder. Allstate asked Jiab, "things like the acromion and the claviculectomy, is it possible that those were not actually symptomatic, that they were just incidental findings when you got in there with the scope?" To which Jiab responded, "it's possible, sure." (Jiab Dep. 55:12-18). Allstate failed to ask a follow up question about Jiab's medical opinion in Mason's case.

9

In sum, the Court will consider Jiab's affidavit because it does not directly contradict Jiab's exert report or deposition testimony and provides helpful information and clarification in response to Allstate's Motion.

**2. A Triable Issue of Fact Exists with Respect to Plaintiffs' No-Fault and Breach of Contract Claims**

Plaintiffs' no-fault and breach of contract claims are both premised on the theory that pursuant to Michigan's No-Fault Act, Allstate is required to pay for the injuries Mason sustained during her November 15, 2019, car accident. (Compl. ¶¶ 14-30, ECF No. 1-2). Allstate argues that both claims fail as a matter of law because Plaintiffs cannot prove each element necessary to trigger Allstate's obligation to pay Mason's expenses. (Def.'s Mot. Summ. J. 12, ECF No. 62). A triable issue of fact exists with respect to each element of Plaintiffs' claims.

Under Michigan's No-Fault Act, "an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance, or use of a motor vehicle. Mich. Comp. Laws § 500.3105. When a plaintiff has a preexisting condition, "recovery is allowed if the trauma caused by the accident triggered symptoms from that condition." *Wilkinson v Lee*, 463 Mich. 388, 395; 617 NW2d 305 (2000).

For a plaintiff to recover no-fault benefits from an insurer, they must show: 1) they actually incurred allowable expenses; 2) the expenses were reasonably necessary to recover from injuries resulting from the automobile accident; and 3) the amount of the expense was reasonable. *Waskowski v. State Farm Mut. Auto. Ins. Co.*, 970 F. Supp. 2d 714, 720 (E.D. Mich. 2013). Additionally, under Mich. Comp. Laws § 500.3105(1), an insurer is only liable for benefits causally connected to the insured's injury. *Griffith v State Farm Mut Auto Ins Co*, 472 Mich. 521, 530-531 (2005).

### a. Causation of Mason's Injury

A triable issue of fact exists on the issue of causation. When parties present conflicting evidence about the cause or aggravation of an injury, "it is the sole province of the jury to determine the weight of the evidence and credibility of the witnesses." *Allard v State Farm Ins Co*, 271 Mich. App. 394, 406-407; 722 NW2d 268 (2006). Further, when relying on expert testimony, as the parties do in this case, there must be facts in evidence to support the opinion testimony of the expert. Mulholland v. DEC Int'l Corp., 432 Mich. 395, 411, 443 N.W.2d 340, 347 (1989). The record in this case contains ample evidence to support differing opinions.

Allstate's expert, Dr. Waltrip, opined that based on Mason's medical records, the most likely injury she sustained from her accident was a trapezial strain. (Waltrip Report, ECF No. 62-8 at PageID. 3078).

Dr. Waltrip further opined that the reason Mason was suffering from continued shoulder pain was because she suffered from adhesive capsulitis. *Id*. Dr. Waltrip reached his conclusion because the most common cause of adhesive capsulitis is diabetes, which Mason has. *Id*.

Lastly, Waltrip surmised that all other conditions Jiab observed during his arthroscopy of Mason were incidental findings that were pre-existing and degenerative. *Id.* at PageID. No. 3080.

Based on the same factual record, Plaintiffs' expert, Jiab, opined that all procedures he performed were reasonably necessary to treat Mason's "symptoms, injuries and complaints" caused by the November 15 crash. (Jiab Report 3, ECF No. 71-5).

At the summary judgment stage, this Court may not make credibility determinations or weigh the evidence presented in support or opposition to a motion for summary judgment; only the finder of fact can make such determinations. *Laster v. City of Kalamazoo*,

746 F.3d 714, 726 (6th Cir. 2014). Therefore, disposition of the causation issue at summary judgment would be inappropriate.

### b. Necessity of Mason's Operation

Like causation, the issue of the necessity of the surgeries Jiab performed on Mason is best left to a jury. To recover costs for medical expenses under the No-Fault Act, plaintiffs must show, by preponderance of the evidence, that expenses for services provided were both reasonable and necessary. *Bronson Methodist Hosp. v. Auto-Owners Ins. Co.*, 295 Mich. App. 431, 449, 814 N.W.2d 670, 681 (2012). The question of whether expenses are reasonable and necessary is generally one for a jury. *Id.* at 449

Allstate argues Suleiman can only offer speculation for his own actions why surgery was performed, so summary judgment is proper. (Def.'s Mot. Summ. J. 18, ECF No. 62). The record does contain evidence disfavoring Plaintiffs, such as Dr. Suleiman's inability to remember why he suggested surgery only two weeks into a more conservative physical therapy plan. (Suleiman Dep. 39:12-40:23).

However, the record also contains evidence supporting Dr. Suleiman's decision to recommend surgery. Any weaknesses Allstate perceives in the record are better suited for argument in front of a jury.

### c. Accrual of Allowable Expenses

Neither party discusses the allowable expenses element.

### d. Reasonableness of Expenses Billed for Mason's Operation

Allstate does not make an argument regarding the reasonableness of the bills they received from Plaintiffs. Instead, Allstate concocts a new element, lawfulness of charges, which is addressed below. (*See* Def.'s Mot. Summ. J. 19).

### 3. "Legality" of Plaintiffs' Charges

Allstate lastly argues that Plaintiffs' charges must be "lawful" to be compensable. (Def.'s Mot. Summ. J. 12, ECF No. 62). Allstate further argues that Plaintiffs' purported expenses are "unbundled" which is not lawful and thus non-compensable. The Court holds that lawfulness is not a specific element for no-fault claims. The Court further holds that "unbundling" is an argument about the *reasonableness* of the amount of a bill, not Plaintiffs' *eligibility* for reimbursement for services performed. Lastly, the Court holds that a triable issue of fact exists with respect to whether Plaintiffs' bills were improperly "unbundled."

### a. Lawfulness is Not an Element Under Michigan No-Fault Law

Allstate argues that under the No-Fault Act, Plaintiffs charges must be lawful to be compensable. The basis of Allstate's lawfulness argument is that Plaintiffs used the American Medical Association's ("AMA") CPT codes to submit their bills to Allstate. Allstate argues that Plaintiffs are bound to use the AMA's guidelines for CPT coding and that, based on the guidelines, the CPT codes Plaintiffs used were "unbundled."[3] Allstate argues that "unbundling" has "long been acknowledged as a fraudulent medical billing practice," and that "claims that are fraudulently billed cannot be considered lawful," and are thus non-compensable under the No-Fault Act. (Def.'s Mot. Summ. J. 19-20, ECF No. 62).

Lawfulness is not a specific element under the No-Fault Act. Allstate has not identified any statute or caselaw that imposes a "lawfulness" requirement in the context of no-fault insurance. Mich. Comp. Laws § 500.3157(1) requires that treatment be "lawfully rendered" but

---

[3] The Court makes no holding regarding whether the use of the AMA's guidelines and CPT codes are mandatory for providers.

not that a medical provider must establish the "lawfulness" of its charges.[4] Further, the cases Allstate cited in its brief discuss Medicare fraud and federal law, not Michigan's No-Fault Act.

Lastly, *Bahri*, the case Allstate claims establishes lawfulness as an element for no-fault claims, is not instructive. *Bahri* was abrogated by *Meemic Ins. Co. v. Fortson*, 506 Mich. 287. *Bahri* also has nothing to do with "unbundling" or fraudulent billing. *Bahri* discusses voiding a no-fault policy when an insured makes material misrepresentations or submits false documentation to secure benefits. *Bahri v. IDS Prop. Cas. Ins. Co.*, 308 Mich. App. 420, 424-25 (Mich. Ct. App. 2014). Lawfulness is not a specific element in a no-fault claim.

### b. Unbundling is an Argument About the Reasonableness of Payment

As an additional matter, even if Plaintiffs were guilty of "unbundling," they would still be entitled to a reduced payment for services. Allstate argues *Mich. Ambulatory Surgical Ctr. V. Liberty Mut. Ins. Co.*, 2022 Mich. App. LEXIS 3527 (Mich. App. Ct. 2022), confirms their argument that the "unbundling" of CPT codes would make Plaintiffs' claims completely non-compensable. (Def.'s Mot. 21, ECF No. 62).

*Ambulatory surgical* stands for no such proposition. In fact, *Ambulatory Surgical*, directly rebuts Allstate's argument.

In *Ambulatory Surgical*, a provider treated a patient for injuries sustained from a car accident. *Id.* at 1. The provider sent the patient's no-fault auto insurer a bill for reimbursement

---

[4] Caselaw addressing whether services were "lawfully rendered" under the No-Fault Act primarily concern medical facilities seeking reimbursement for care they were not licensed to provide. *See, e.g., Cherry v. State Farm Mut. Auto Ins. Co.*, 498 N.W.2d 788, 790 (Mich. Ct. App. 1992) (holding that "only treatment lawfully rendered, including being in compliance with licensing requirements, is subject to payment as a no-fault benefit."); *Miller v. Allstate*, 275 Mich. App. 649, 656 (Mich. Ct. App. 2007) ("A clinic or institution is lawfully rendering treatment when licensed employees are caring for and providing services and treatment to patients…"). Allstate does not argue that Plaintiffs were improperly licensed.

using five separate CPT codes. *Id.* The auto insurer paid the claims for three CPT codes and reduced the claims for two allegedly "unbundled" codes to zero because they were duplicative of charges already paid. *Id*. at 2. In response, the plaintiffs filed suit to collect payment for the two unpaid codes. *Id*.

Ultimately, the district court granted, and the appellate court affirmed, the insurance company's motion for summary judgment. The court found plaintiffs failed to show a genuine issue of fact that it was unreasonable for the insurance company to deny payment on the "unbundled" codes. *Id*. at 7.

Nonetheless, *Ambulatory Surgical* does not support Allstate's "unbundling" argument because of one important aspect — the provider in *Ambulatory Surgical* received partial payment for the procedures performed. *See Id.* at 6. Allstate argues it should not have to pay Plaintiffs anything because the codes they used were allegedly "unbundled." The insurance company in *Ambulatory Surgical*, however, simply argued it would be unreasonable for them to pay the "unbundled" codes because it would be duplicative of charges already paid. *Id.* at 7.

Allstate's position is too extreme. Based on *Ambulatory Surgical*, "unbundling" will reduce, not eliminate, an insurers obligation to pay. A defendant may argue that an amount billed by a provider is unreasonable because they "unbundled" their bill.[5] However, "unbundling" is not unlawful in the way Allstate contends. "Unbundling" does not foreclose a provider's ability to recover reasonable costs for its services. "Unbundling" is merely an argument that it would be unreasonable to pay a provider twice for the same procedure.

---

[5] As discussed above, the reasonableness of the amount of a reimbursement request is a question for a jury. *Bronson Methodist Hosp. v. Auto-Owners Ins. Co.*, 295 Mich. App. 431, 449 (2012).

Classifying unbundling as an issue of amount of payment, rather than entitlement to payment, is also logical. Michigan's No-Fault Act entitles providers to reimbursement of reasonable charges incurred for reasonably necessary services performed. It would be unreasonable, under Mich. Comp. Laws § 500.3107, for a provider to effectively double bill an insurer by "unbundling." But it would be equally unreasonable for a provider to receive nothing for the services performed because it "unbundled." Therefore, even if a provider "unbundled" they would still be entitled to at least some compensation for the services they performed.

### c. There is a Triable Issue of Fact as to Whether Plaintiffs' Charges were Unbundled

Lastly, in this case, there is a triable issue of fact whether the CPT codes Plaintiffs used to bill Allstate were improperly "unbundled," and thus, unreasonable.

Allstate submitted an expert report from Tamera Rockholt. Rockholt opined that Plaintiffs' charges for synovectomy and lysis, as well as other charges, violate the AMA's coding guidelines and are "unbundled." (*See* Rockholt Report at 4, ECF No. 62-11). She further opined Plaintiffs' charges for appointments were improperly coded or lacked record evidence. *Id*. at 2-3.

Plaintiff's expert, Samer Suleiman, directly contradicts Rockholt in his report. Samer's report opines that the AMA definitions and guidelines are non-binding in this instance. His report also states that the CPT codes used were correct and properly formatted. (Samer Report at 4 – 9). Further, Jiab's affidavit provides a lengthy explanation why he used certain CPT codes. (Jiab Aff. ¶ 19, ECF No. 64-2). Therefore, the record contains sufficient evidence to create a triable issue of fact whether the CPT codes were Plaintiffs used were reasonable or improperly unbundled.

In conclusion, the Court holds that lawfulness is not a specific element required under Michigan's No-Fault Act. The Court further hold that Allstate's "unbundling" argument is an argument about the reasonableness of payment for the services performed, which is a question of fact for a jury. Lastly, the Court holds that a triable issue of fact exists concerning whether Plaintiffs' charges were "unbundled," and thus, unreasonable.

## CONCLUSION

For the reasons set forth above, **IT IS SO ORDERED** that Allstate's Motion for Summary Judgment is **DENIED**. The Court holds 1) that it may consider Jiab's affidavit; 2) that a triable issue of fact exists with respect to the causation of Mason's injuries and the necessity of treatment Mason received; 3) that legality is not a specific element when determining a medical provider's eligibility for reimbursement under Michigan's No-Fault Act; 4) that the "unbundling" of charges is a factual issue concerning the reasonableness of amounts billed; and 5) that the record contains sufficient evidence about the CPT codes Plaintiffs used to create a dispute of fact whether the codes were "unbundled" and unreasonable.

**IT IS SO ORDERED.**

                                                s/Sean F. Cox
                                                Sean F. Cox
                                                United States District Judge

Dated: December 13, 2022

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 13, 2022, by electronic and/or ordinary mail.

                                                s/Jennifer McCoy
                                                Case Manager